UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TOMMY MEJIA,<br>　　　Plaintiff, | No. 3:25-cv-373 (JCH) |
| v. | |
| NED LAMONT, et al.,<br>　　　Defendants. | January 7, 2025 |

### INITIAL REVIEW ORDER

Tommy Mejia ("Mr. Mejia"), proceeding pro se, brings this action against Connecticut Governor Ned Lamont and a number of prison officials under section 1983 of title 42 of the U.S. Code.  See Complaint ("Compl.") (Doc. No. 1).[1]  The court has reviewed the factual allegations in his Complaint and has conducted an initial review of those allegations pursuant to section 1915A of title 28 of the U.S. Code.  Mr. Mejia's Complaint is construed as bringing Fourteenth Amendment equal protection claims against the defendants.  The claims are dismissed for the reasons below.

**I.     Background**

Mr. Mejia was housed at Cheshire Correctional Institution ("Cheshire") when he filed his Complaint.[2,3]  See Compl. at ¶ 2.  Mr. Mejia alleges that individuals housed in

---

[1] The defendants listed are "Ned Lamont; S. Carlos; Angel Quiros; E. Garcia; Jennifer Reis; A. Santiago; Carnos Nunez; W. Mulligan; Domitrz; Soley, Victoria."  See Compl at p. 1.

[2] Mr. Mejia is now incarcerated at Osborn Correctional Institution.  See Doc. No. 10; see also Offender Information Search, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=379060 (last visited July 24, 2025).  The court takes judicial notice of Mr. Mejia's incarceration status.  See Taveras v. Semple, 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC offender information search).

[3] Mr. Mejia is no longer at Chesire; therefore, the injunctive relief claims he seeks regarding the policy changes are moot.  See, infra, at III.B.

Cheshire's North 5 and North 6 units are treated differently than those housed in other units.  Id. at ¶ 14.  For example, those housed in North 5 and North 6 have greater access to counselors, legal materials, account balances, and care packages.  Id. at ¶ 15.  They have access to amenities like video game consoles, air fryers, microwaves, and fast food; and the inmates are allowed to play cards with correctional staff.  Id. at ¶¶ 22, 24.  They are allowed to spend more time out of their cell, id. at ¶¶ 16–17, are permitted to touch visitors, and enjoy longer visits with family and friends.  Id. at ¶¶ 18–21.  Those housed in North 5 and North 6 also have greater opportunity for an early release compared to those housed in other units and are allegedly not disciplined for violating prison rules despite violating those rules as often as inmates in other units.  Id. at ¶¶ 23, 26.

Unlike those in other units, individuals in the North 5 and North 6 units may participate in Cheshire's T.R.U.E. Program.  Id. at ¶ 23.  "The T.R.U.E. program pairs youthful individuals who are incarcerated with mentors with long sentences who can provide guidance to the newer inmates in their path to rehabilitation."  See State v. Young, 2021 WL 6100479, at *2 (Conn. Super. Ct. Nov. 29, 2021).  Mr. Mejia alleges that those who are not participating in the T.R.U.E. program have a lower probability of early release and are "frowned upon . . . for not being in said . . . program."  See Compl. at ¶ 23 (cleaned up).

Mr. Mejia sues the defendants in their individual and official capacities.  Id. at ¶ 13. He seeks compensatory damages, punitive damages, injunctive relief, and declaratory relief.  Id. at 10-11.

## II.     Standard of Review

The Prison Litigation Reform Act requires federal courts to review complaints brought by incarcerated plaintiffs seeking relief against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  Upon review, the court must dismiss a complaint, or any portion of a complaint, that the court concludes it lacks subject matter jurisdiction over, is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks relief from a defendant who is immune from such relief.  See 28 U.S.C. section 1915(e)(2)(B), 1915A(b); Dillon v. Rosen, 2022 WL 4538397, at *5 (S.D.N.Y. Sept. 28, 2022) (citing Fed. R. Civ. P. 12(h)(3)). Dismissal may be with or without prejudice.  See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

A complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are insufficient.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  See Twombly, 550 U.S. at 570.

"Pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  See Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).  Even self-represented parties, however, must satisfy the basic rules of pleading.  See Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

### III. Discussion

Construing Mr. Mejia's Complaint liberally and interpreting it to raise the strongest arguments it suggests, the court concludes that Mr. Mejia's Complaint asserts a Fourteenth Amendment equal protection claim related to prison officials' disparate treatment of prisoners based on housing assignment. See Sykes, 723 F.3d at 403

  A. Governor Lamont

To the extent Mr. Mejia sues Governor Lamont for damages in his official capacity, sovereign immunity bars the claim. Absent abrogation or consent, the Eleventh Amendment bars suits in federal court against "state agents . . . that are, effectively, arms of a state." See Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006). Suits for damages against state officials in their official capacities constitute actions against the state and are barred by the Eleventh Amendment. See Brandon v. Holt, 469 U.S. 464, 472 (1985).

Regarding injunctive and prospective declaratory relief, the Eleventh Amendment does not bar certain federal suits against state officials in their official capacities when the plaintiff "seek[s] prospective injunctive relief." See Ex parte Young, 209 U.S. 123, 155-56 (1908). However, "actions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." See Davidson v. Scully, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) (cleaned up). The Complaint does not allege that Governor Lamont has any duties related to prison programs or determinations as to who may participate in those programs. The Complaint also fails to allege that Governor Lamont determines housing assignments within the Department

of Corrections.  Mr. Mejia, therefore, fails to allege cognizable claims against Governor Lamont in his official capacity.  Mr. Mejia's claim against Governor Lamont in his official capacity is dismissed without prejudice.  See Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1074 (2d Cir. 2021).

To the extent Mr. Mejia sues Governor Lamont for damages in his individual capacity, Governor Lamont lacks sufficient personal involvement over Cheshire Correctional's programs. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983."  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).  Mr. Mejia makes no allegations as to Governor Lamont, let alone to plausibly allege his personal involvement.  Based on the Complaint, there is no basis to support the claim Governor Lamont had any involvement.  Governor Lamont lacks sufficient personal involvement with the Cheshire prison programs, privileges, or enforcement of disciplinary action.  Therefore, Mr. Mejia's claim against Governor Lamont in his individual capacity is dismissed without prejudice for failure to state a claim upon which relief can be granted.

B.  Prison Officials

The remaining defendants work for Connecticut's Department of Corrections.  See Compl. at ¶¶ 3, 5-12 (the "Prison Defendants").  Mr. Mejia's claim for damages against the Prison Defendants in their official capacities is barred by sovereign immunity and cannot be heard in federal court.  See Brandon v. Holt, 469 U.S. at 472.  Therefore, to the extent Mr. Mejia sues the Prison Defendants in their official capacities, those claims are dismissed with prejudice.

Mr. Mejia also seeks injunctive and prospective declaratory relief under the Equal Protection Clause. Under the Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV section 1. Mr. Mejia does not allege a class-based violation. See generally Compl. Therefore, the court must assess whether "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." See Ratches v. Guerrera, 2025 WL 437494, at *2 (D. Conn. Feb. 7, 2025) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)). There are two "distinct pathways for proving a non-class-based Equal Protection violation." See Hu v. City of New York, 927 F.3d 81, 93 (2d Cir. 2019).

The first pathway, "[a] selective enforcement claim[,] requires a demonstration that a person was treated differently than others similarly situated based on impermissible considerations, such as race or religion." See Caldwell v. Geronimo, 2023 WL 6381292, at *2 (2d Cir. Oct. 2, 2023) (citing Hu, 927 F.3d at 91). To prevail on a selective enforcement claim, a plaintiff must show that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." See Hu, 927 F.3d at 91 (quoting Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995)).

Mr. Mejia's allegations that individuals housed in the North 5 and North 6 units enjoy more privileges than prisoners living outside those units are insufficient to state a selective enforcement claim. Mr. Mejia does not allege that the disparate treatment

6

based on housing assignment was motivated by race or other protected status, personal malice, or other improper purpose. See Westbrook v. City of Meriden, 2013 WL 172992, at *4 (D. Conn. Jan. 16, 2013) (citing Yale Auto Parts v. Johnson, 758 F.2d 54, 61 (2d Cir. 1985)) (concluding that, "[i]n the absence of the essential allegation that others were treated differently based on an unlawful consideration, the plaintiff's complaint is wholly insufficient to state an equal protection claim."). Therefore, Mr. Mejia has not alleged an equal protection violation based on the first, non-class-based pathway.

The second pathway, "a class-of-one" claim, "also requires a comparator and a lack of rational basis for the differential treatment." See Caldwell, 2023 WL 6381292, at *2. "A plaintiff brings a class-of-one equal protection claim where he alleges that he was 'intentionally treated differently from others similarly situated and there [was] no rational basis for the difference in treatment.'" See Ruggiero v. Fischer, 807 F. App'x 70, 74 (2d Cir. 2020) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). The comparator must be "identical to the plaintiff such that 'no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy.'" See Jones v. Greene Cnty. Sheriff's Dep't, 2025 WL 1166199, at *1 (2d Cir. Apr. 22, 2025) (quoting Hu, 927 F.3d at 92) (cleaned up).

Even if Mr. Mejia could establish that he was "prima facie identical" to those in the North 5 and North 6 units, he has not alleged facts showing that "there [was] no rational basis for the difference in treatment." See Ruggiero, 807 F. App'x at 74 (internal quotation mark omitted). Mr. Mejia alleges that those housed in North 5 and

North 6 receive preferential treatment due to their enrollment in the T.R.U.E. Program. See Compl, at 10. "The T.R.U.E. program pairs youthful individuals who are incarcerated with mentors with long sentences who can provide guidance to the newer inmates in their path to rehabilitation." See State v. Young, 2021 WL 6100479, at *2 (Conn. Super. Ct. Nov. 29, 2021). It does not appear that Mr. Mejia would qualify for participation in the T.R.U.E. program, whose participants are "young men aged 18-25."[4] Mr. Mejia is 31 years old.[5]

Mentors to T.R.U.E. participants typically have "long sentences" and are individuals "who can provide guidance to the newer inmates in their path to rehabilitation." See State v. Young, 2021 WL 6100479, at *2. Conferring benefits on incarcerated individuals based on age, i.e., pairing "who can provide guidance to the newer inmates in their path to rehabilitation," Young, 2021 WL 6100479, at *2, is "rationally related to the penological goals of the prison system." See Moore v. N.Y. State Dep't of Corr. Servs., 26 F. App'x 32, 33 (2d Cir. 2001).

Furthermore, courts have recognized that "[c]onferring benefits to those with a history of good behavior encourages rehabilitation, institutional security, and the safety of inmates, staff, and visitors." See Flynn v. Thatcher, 819 F.3d 990, 991 (7th Cir. 2016) (per curiam) (collecting cases and concluding that "[t]here are obvious reasons to extend preferential treatment to inmates in the Honor Program."). Mr. Mejia has not alleged facts showing that he would qualify as a T.R.U.E. participant or as a mentor to

---

[4] Vera, Dispatches from T.R.U.E., https://www.vera.org/news/dispatches-from-t-r-u-e-2 (last visited July 24, 2025). "The T.R.U.E. program has worked with the Vera Institute of Justice to rehabilitate and mentor youthful offenders." State v. Young, 2021 WL 6100479, at *2.

[5] See Offender Information Search, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=379060 (last visited January 6, 2025).

T.R.U.E. participants. He also fails to allege plausible facts to support the conclusion that the T.R.U.E. program's existence is unconstitutionally irrational. See generally Compl. Therefore, Mr. Mejia has not alleged an Equal Protection violation based on the second non-class-based pathway.

Mr. Mejia alleged a non-class based Equal Protection claim. See, supra, at 5. He had two pathways to successfully pled the claim. See, supra, at 6. However, Mr. Mejia has not pled an Equal Protection claim based on the first or second pathways. See, supra, at 7-8. Therefore, Mr. Mejia has not pled any viable Equal Protection claims.

Mr. Mejia also makes claims for monetary damages against the Prison Defendants in their individual capacities. "[E]ach . . . defendant, through the official's own individual actions," must have "violated the Constitution." See Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). However, Mr. Mejia has not alleged any actions which amount to violation of the Equal Protection Clause, so his claim for damages against Prison Defendants in an individual capacity is dismissed.

Mr. Mejia has failed to plead any violations of federal law. Therefore, his claims for injunctive and prospective declaratory relief against the prison officials in their official capacities are dismissed with prejudice.[6] His claim for damages against the prison officials in their individual capacities is dismissed without prejudice for failure to state a claim.

---

[6] These claims are moot given Mr. Mejia is no longer at Chesire. See, supra, at III.B; fn.3.

9

## IV.    Conclusion

The court, with great hesitancy, will permit Mr. Mejia to replead on certain claims. The court views it highly unlikely that Mr. Mejia will be able to allege personal involvement of Governor Lamont; however, if there is a basis to do so, Mr. Mejia may replead within 21 days.  Mr. Mejia claims seeking injunctive and prospective declaratory relief against the Prison Defendants in their official capacities are dismissed with prejudice. Mr. Mejia claims for damages against the prison officials in their individual capacities are dismissed without prejudice for failure to state a claim.  Mr. Mejia may, if he can allege such a claim as described above, replead against the Prison Defendants within 21 days.

**So ordered.**

Dated at New Haven, Connecticut, this 7th day of January, 2026

/s/ Janet C. Hall
Janet C. Hall
United States District Judge